```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

Paul Prachun, et al.,          :

        Plaintiffs,             :

    v.                          :      Case No. 2:14-cv-2251

                                :      JUDGE ALGENON L. MARBLEY
CBIZ Benefits & Insurance              Magistrate Judge Kemp
    Services, Inc., et al.,     :

        Defendants.             :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff Paul Prachun used to work for Riverside Radiology and Intervention Associates, Inc. (RRIA). He is a radiologist. He went to work for RRIA in 2011 after obtaining insurance coverage under Medicare Parts A and B in 2010.

According to Dr. Prachun's complaint, he dropped his Medicare Part B coverage after being told by RRIA that he did not need it, and that once he retired, he could reacquire it. He retired in 2013. Unfortunately, as things turned out, he was unable to reactivate his Medicare Part B coverage, and the insurance he was able to keep after his retirement did not pay for most of his medical expenses.

Dr. Prachun and his wife filed this case in the Court of Common Pleas of Franklin County, Ohio. They assert various state law negligence claims against RRIA, CBIZ Benefits Insurance Services, Inc. (which serves as RRIA's benefits coordinator), and Medical Mutual of Ohio, Dr. Prachun's current medical insurer. RRIA removed the case (with the consent of the other two defendants), alleging in the notice of removal (Doc. 1, at 1-2) that "Plaintiffs have brought claims under the laws of the United States which state claims which fall within the scope of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C.

§1001, *et seq*. Plaintiffs' claims are therefore preempted by ERISA."

The Prachuns disagree with that legal analysis. They believe that all of their claims are perfectly acceptable state law claims and that ERISA does not apply here. For that reason, they have moved to remand the case to the Franklin County Court of Common Pleas. That motion (Doc. 9) is fully briefed and has been referred to the Magistrate Judge for the issuance of a Report and Recommendation. For the following reasons, it will be recommended that the motion to remand be denied.

## II. Defining the Question

ERISA preemption can, to put it mildly, be a confusing area of the law. As one court has put it, "any court forced to enter the ERISA preemption thicket sets out on a treacherous path." Gonzales v. Prudential Ins. Co. of America, 901 F.2d 446, 451-52 (5th Cir. 1990). It helps, however, to know exactly what the Plaintiffs' claims are before figuring out if they are preempted by ERISA and replaced by ERISA claims. Because RRIA is the party advocating for preemption, the Court starts with its arguments.

RRIA makes the case for preemption (and therefore removal jurisdiction) in its Memorandum Contra to Plaintiffs' Motion to Remand (Doc. 15). Its argument goes as follows. First, it describes the claims against it as relating "entirely to allegations of breaches of [RRIA's] duty to provide competent and informed advice with respect to ... Dr. Prachun's medical insurance coverage." Doc. 15, at 1. It then asserts that the duty which was allegedly breached was a fiduciary duty owed by an ERISA plan administrator (presumably CBIZ) and that the damages claimed are being measured by the value of the lost insurance coverage, some of which would have been provided by an ERISA-qualified plan. Under these circumstances, RRIA asserts that all of the claims in the complaint are completely preempted by ERISA,

-2-

and that they are all necessarily claims for benefits under 29 U.S.C. §1132.

Plaintiffs say this is much too simplistic an analysis. They first point out that there is a distinction between claims that are defensively preempted by ERISA and claims that are completely preempted (although they do not appear to concede that any of their claims fall into the former category). They then cite to some fairly recent Supreme Court and Court of Appeals cases which attempt to clarify the scope of ERISA complete preemption, and argue that complete preemption does not apply where a claimant is not seeking benefits to which he is entitled only because of the terms of an ERISA benefit plan. Finally, they note that they have not alleged any breaches of duty imposed by an ERISA benefit plan, but rather breaches of state common law duties. For these reasons, they urge the Court to find that it lacks jurisdiction over their claims.

It is important, first, to identify which of the various causes of action in the complaint must be analyzed to see if they are completely preempted by ERISA. It is difficult to see how any of the claims relating to Dr. Prachun's Medicare coverage could be the subject of ERISA preemption. As Plaintiffs point out, Medicare is not an ERISA plan. See, e.g., Kesselman v. The Rawlings Co., LLC, 668 F.Supp.2d 604, 606 n.4 (S.D.N.Y. 2009)(Medicare is "not an ERISA plan"). Although RRIA's memorandum does not engage in a claim-by-claim analysis, it does not appear to be arguing that Medicare is somehow covered by ERISA. Consequently, the Court will focus only on the claims that do not implicate Dr. Prachun's Medicare coverage.

The allegation that Dr. Prachun dropped his Medicare Part B coverage in reliance on statements made by one or more of the defendants, and was unable to obtain that coverage later, is undoubtedly a major focus of the complaint. There is another

claim, however, and if that one is preempted by ERISA and necessarily converted into an ERISA claim, removal was still proper.  The presence of one federal question is enough to support removal of the entire action.  The Court must therefore attempt to parse out the elements of the non-Medicare claim.

That is easier said than done.  The complaint, which is the only document setting forth the operative facts, is somewhat vague on this point.  Plaintiffs aver that in June, 2013, about a month after Dr. Prachun retired from RRIA, CBIZ provided him with some information under COBRA.  He completed and submitted the COBRA forms he got from CBIZ, and claims that it was his understanding that, by doing so, he was getting insurance coverage "identical to RRIA's existing coverage."  It can be inferred from the complaint that Medical Mutual of Ohio was the carrier for this insurance coverage.  Dr. Prachun specifically asserts that MMO told him that its insurance was "primary."  Finally, as to this particular coverage, he claims that it paid for only 20% of the expenses of his medical procedures.  Complaint, ¶¶15-22.

Those are the only facts pleaded about the COBRA coverage.  Dr. Prachun's negligence claim against MMO based on these facts includes this specific allegation: "MMO owed a duty to Dr. Prachun to competently and accurately process his application for continuation coverage and to provide accurate information to Dr. Prachun regarding said coverage" - a duty which he claims was breached.  Complaint, ¶¶33-34.  The damages on this claim are not described in any detail, but it is a fair inference from the complaint that since this claim does not appear to relate at all to the Medicare Part B issue, Dr. Prachun is attempting to recover the difference between what he thought he was getting in the MMO policy and what he actually got, based on MMO's having told him something about the policy's coverage that was not true.

The complaint does not affirmatively state that the MMO plan is an ERISA plan.  The notice of removal does not do so either; its allegations about ERISA plans are much more vague.  But COBRA is part of ERISA, and Dr. Prachun has claimed that it was his understanding that his continuation coverage under COBRA would be identical to the coverage he received while an employee of RRIA.  Consequently, the Court will assume that the MMO plan under which Dr. Prachun is now covered is an ERISA plan.  The question raised by the motion to remand can now be clarified.  As the Court perceives it, this is the issue:

> Is a state law negligence claim against a provider of an ERISA benefits plan (or against an employer or a claims administrator) completely preempted by ERISA if the claim is based on an allegedly false representation made to the beneficiary about the scope of the coverage provided by the plan?

If that is really the question, it significantly enhances the Court's ability to answer it accurately notwithstanding the complexities of ERISA preemption law.

### III.  Discussion

The Court will begin with a very brief description of the parameters of ERISA complete preemption.  The Court of Appeals, in a case relied upon heavily by the Plaintiffs, and which in turn draws on the Supreme Court's decision in <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200 (2004), described it this way.  After noting that, ordinarily, the question of federal jurisdiction is decided with reference to the plaintiff's "well-pleaded complaint" – the concept being that if a plaintiff has chosen not to plead a federal claim, the Court will not second-guess that decision by implying one – the Court of Appeals said that

> there is an exception to the well-pleaded complaint rule: "when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." <u>Davila</u>, 542 U.S. at

> 207, 124 S.Ct. 2488 (brackets and internal quotation marks omitted). Although ERISA's express-preemption clause does not have this effect, another section of ERISA does. Section 1132(a)(1)(B) provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" The Supreme Court has said that this provision is part of a "civil enforcement scheme" whose "comprehensive" and "carefully integrated" character "provide[s] strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal quotation marks and emphasis omitted). Thus, when a state-law claim by its nature "falls 'within the scope of' ERISA § [1132](a)(1)(B)[,]" Davila, 542 U.S. at 210, 124 S.Ct. 2488, two consequences follow: first, the claim is deemed to be a federal claim (albeit an invalid one) for purposes of federal-question jurisdiction and thus removal; and second, the claim is preempted. Id. at 209, 124 S.Ct. 2488.

Gardner v. Heartland Indus. Partners, LP, 715 F.3d 609, 612-13 (6th Cir. 2013).

Davila represented an attempt to bring some clarity to the area of ERISA preemption, especially as it relates to preemption under §1132, through which state law claims are entirely displaced and converted into affirmative federal law claims. There, the plaintiffs complained that their health insurance plans, which were ERISA plans, refused to pay for certain medications or medical procedures.  The only relationship between the plaintiffs and the defendants was that the defendants administered portions of the ERISA-regulated benefit plans.  The Court concluded that the plaintiffs were "complain[ing] only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans" and that "[u]pon the denial of benefits, respondents could have paid for the treatment

-6-

themselves and then sought reimbursement through a §502(a)(1)(B) action, or sought a preliminary injunction ...." Davila, 542 U.S. at 211. It rejected the notion that the plan administrators were subject to a duty of ordinary care that arose independently of the ERISA plans, and since the duty they allegedly breached stemmed from an ERISA plan, claims for the breach of that duty were ERISA claims.

Davila has been interpreted as establishing a two-part test, both parts of which must be met before complete preemption is found.

> Specifically, claims are completely preempted by ERISA if they are brought (I) by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," [] and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions." Id. The test is conjunctive; a state-law cause of action is preempted only if both prongs of the test are satisfied.

Montefiore Medical Center v. Teamsters Local 272, 642 F.3d 321, 328 (2nd Cir. 2011)(footnote omitted). Do the Plaintiffs' claims against MMO satisfy this test?

Taking the second prong first, it appears from the complaint that MMO's entire role in the controversy was to provide the insurance plan which covered both regular RRIA employees and, through COBRA, retirees such as Dr. Prachun who elected continuation coverage. But for the existence of the plan (which, again, the Court assumes is an ERISA-regulated plan, see Christenson v. Mutual Life Ins. Co. Of New York, 950 F.Supp. 179, 181 (N.D. Tex.1996)(stating that "Plaintiffs' assertion of COBRA coverage presupposes the existence of, and Plaintiffs' participation in, a benefits plan governed by ERISA"), MMO had no relationship with, and owed no duty to, the Plaintiffs. Any duty of ordinary care, which is at the heart of a negligence claim, is derived directly from MMO's status as the provider of coverage

under an ERISA-regulated plan and is therefore not "independent" of ERISA. See id. The same would hold true for any claim against CBIZ, as a plan administrator, concerning the extent of coverage under the MMO policy. Claims for errors occurring in the administration of ERISA benefits which seek, among other damages, the benefits that would have been provided but for the alleged errors, are claims premised on duties arising from ERISA and from the defendants' status as plan providers, administrators, or fiduciaries. See Overall v. Sykes Health Plan Services, Inc., 2006 WL 1382301, *4 (W.D. Ky. May 16, 2006).

The first prong actually involves two separate inquiries. See Montefiore Medical Center, supra. The first question is "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)," and the second is "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to §502(a)(1)(B)[29 U.S.C. §1132(a)(1)(B)]." Id. Here, the former inquiry is easy to answer. Dr. Prachun is a plan beneficiary, and beneficiaries are within the class of persons who can sue for benefits under §1132. "A participant or beneficiary of an ERISA qualified plan may bring suit in federal court to recover benefits due under the terms of the plan." Wagner v. Ciba Corp., 743 F.Supp.2d 701, 708 (S.D. Ohio 2010). That leaves only the second question - the presence of a colorable claim for benefits - to be answered, and there is much case law on that subject.

It might be argued that Dr. Prachun is not actually asserting a claim for benefits under the MMO plan because he appears to concede that the plan (as written, but not as promised) did not actually provide more benefits than the 20% of his expenses which were paid. That type of argument against ERISA preemption has not fared well in other courts. "Generally speaking, ERISA preempts state common law claims of fraudulent or

negligent misrepresentation when the false representations concern the existence or *extent of benefits* under an employee benefit plan." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001)(emphasis supplied). Courts have found ERISA preemption under facts very similar to those alleged by the Plaintiffs. For example, in McDonald v. Household Intern., Inc., 425 F.3d 424 (7th Cir. 2005), the plaintiff claimed he was told, incorrectly, that he would receive health insurance benefits within thirty days of going to work for his employer. He did not, and incurred medical expenses which, had he been given coverage as promised, would have been paid by the plan. The complaint included a claim for negligence in failing to provide insurance coverage. In finding preemption, the court noted that the state law claims, no matter how they were characterized, "focus[d] on the defendants' failure to give McDonald the benefits under the medical plan that he had been promised." Id. at 429. That, said the court, "is precisely the kind of claim that ERISA §502(a) allows plan participants to bring," id., even though, of course, the plaintiff was not actually covered by the terms of any employee benefit plan when he incurred the expenses in question. See also Van Natta v. Sara Lee Corp., 439 F.Supp.2d 911, 935 (N.D. Iowa 2006), which held that claims for misrepresentation as to the scope of coverage under an ERISA plan were "precisely the kinds of claims that the Davila Court held to be preempted under § 502(a)."

It does not matter that Dr. Prachun is not seeking benefits directly from the MMO plan. Although "the crux of the matter is the nature of the remedies that [Plaintiff] requests," Thurman v. Pfizer, Inc., 484 F.3d 855, 862 (6th Cir. 2007), any "claims ... based on ... expectation damages ... (i.e., the difference between the benefits promised and the benefits to which [Dr. Prachun] was entitled) ... are clearly preempted." Id. The

-9-

complaint, fairly read, alleges just that: a difference between the benefits under the MMO plan which Dr. Prachun believed, based on either CBIZ's or MMO's representations, he was getting, and the benefits actually provided.  That is a claim for benefits by a plan participant; it is cognizable under §1132; and it is therefore completely preempted, even if phrased in terms of negligence.  That conclusion supports the existence of jurisdiction in this case and the propriety of RRIA's removal.

## IV. Recommended Order

For the reasons set forth above, it is recommended that Plaintiffs' motion (Doc. 9) to remand be denied.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

```
                            /s/ Terence P. Kemp           
                         United States Magistrate Judge
```