IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL AND LINDA PRACHUN, | : | |
| | : | Case No. 2:14-CV-2251 |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Terence P Kemp |
| CBIZ BENEFITS & INSURANCE SERVICES, INC., *et al.*, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter is before the Court on Defendant Riverside Radiology and Interventional Associates, Inc.'s[1] (hereinafter "RRIA") Motion to Stay Proceedings and to Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. (Doc. 8). Defendant argues that negligence claims fall within their arbitration agreement with Dr. Prachun, and this Court should stay Plaintiffs' claims pending resolution of those claims in arbitration. Plaintiffs respond that their dispute with Defendant does not arise out of or relate to the employment agreements with Dr. Prachun, and thus they are not required to resolve such disputes pursuant to the arbitration clause within the employment agreement.  For the reasons set forth herein, Defendant's Motion is **GRANTED**.

          **I.**   **BACKGROUND**

In May 2011, RRIA hired Dr. Paul Prachun as a radiologist.  At the time Dr. Prachun was hired, and during the course of his employment, he signed two Employment Agreements (the "Agreements") with RRIA. Both parties signed and consented to the Agreements, and both

---

[1] The other defendant, CBIZ Benefits & Insurance Services, Inc., does not join in this motion.

1

Agreements contain arbitration clauses. The first agreement[2] was signed by both parties on March 15, 2011, wherein both agreed that:

> any and all disputes, controversies or claims arising out of or relating to this Agreement or Employee's employment by the Company shall be settled by arbitration. The arbitration shall take place in Columbus, Ohio and shall be conducted pursuant to the then-existing Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall be before the three-member panel, one appointed by Employee, one appointed by the Corporation, and the third appointed by the two so chosen, and all of whom shall be professionals experienced in the health care industry, either as physicians, administrators, attorneys, consultants or other advisors.

(Doc 8-1 at 14). Both parties signed the second agreement on May 9, 2012, wherein both parties agreed that:

> any and all disputes, controversies or claims arising out of or relating to this Agreement or Physician's engagement by the Company shall be settled by arbitration. The arbitration shall take place in Columbus, Ohio and shall be conducted pursuant to the then-existing Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration shall be before a single neutral arbitrator, who shall be (i) a professional experienced in the health care industry, either as physician, administrator, attorney, consultant or other advisor, and (ii) selected by mutual agreement. Absent agreement, any party may petition AAA to appoint the arbitrator.

(Doc. 8-1 at 23).

On May 9, 2013, Dr. Prachun retired from RRIA. (Doc. 2 at 3). On May 16, 2013, Dr. Prachun applied for Medicare Part B coverage during the Special Enrollment Period. *Id*. On or about July 12, 2013, Dr. and Mrs. Prachun were advised that Dr. Prachun was not eligible to enroll in Medicare Part B because he was not "actively employed" at RRIA. *Id*. Following the denial of medical benefits, Plaintiffs filed a complaint in the Franklin County Court of Common Pleas against RRIA, alleging Defendant breached a duty owed to Dr. Prachun to provide competent and informed advice with respect to his medical insurance coverage. Specifically,

---

[2] The first Agreement's original term was defined as "[on]e (1) year from the date Employee first provides full-time services to the Corporation." (Doc 8-1 at 16).

Plaintiffs claim Defendant was negligent in allowing him to "drop his Medicare Part B coverage while employed at RRIA, by failing to advise him that Continuation Coverage under COBRA would be secondary to Medicare and by failing to advise that he was not eligible for Medicare Part B benefits following his retirement." *Id.* In addition, Plaintiffs claim that Defendant breached an alleged duty to avoid causing Dr. Prachun and his spouse severe emotional distress. *Id.* Pursuant to Defendant's motion, this case was removed to federal court.

On February 2, 2015, the Magistrate Judge found, and this Court upheld, that the Employee Retirement Income Security Act ("ERISA") preempted Plaintiffs' claim for benefits, supporting the existence of federal jurisdiction in this case and the propriety of removal. (Doc. 21). Plaintiffs' "claim is for benefits by a plan participant; it is cognizable under [29 USC] §1132; and it is therefore completely preempted, even if phrased in terms of negligence." (*Id*. at 10).

## II. MOTION TO COMPEL ARBITRATION STANDARD OF REVIEW

Under the FAA, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle a controversy thereafter . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts have "described this provision as reflecting both a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46, 179 L.Ed.2d 742 (2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Except where "the parties clearly and unmistakably provide otherwise," it is "the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning" a particular matter. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 295 (2010) (citing *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986)). The courts "discharge this duty by: (1) applying the

3

presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." *Id.* In examining the contract to determine whether arbitration must be compelled, the court:

> [f]irst, must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2002)).

Under the terms of the FAA, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. and Ohio, Inc.*, No. 2:13-CV-1265, 2014 WL 1670099, at *4 (S.D. Ohio April 23, 2014) (citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

### III.  ANALYSIS

Pursuant to the FAA, Defendant moves this Court to stay the proceedings and to order arbitration in accordance with the parties' Agreements. (Doc. 8 at 1). In support of its motion, Defendant argues that the arbitration clauses in the Agreements must be enforced by this Court because: (1) Dr. Prachun's agreement to arbitrate is enforceable under the FAA; (2) the

Plaintiffs' claims are within the scope of the Agreement; and (3) Mrs. Prachun's claim is a derivative of Dr. Prachun's potential claim and should be arbitrated. *Id*. Further, Defendant points to the language within the Agreement that states "any and all disputes, controversies or claims arising out of or relating to this Agreement or Employee's employment by the Company shall be settled by arbitration." (Doc. 8-1 at 14:23).

Plaintiffs respond that their dispute with the Defendant does not arise out of or relate to the Agreements or to Dr. Prachun's employment with RRIA. (Doc. 14 at 2). Instead, Plaintiffs argue that the disputes pertain to the Defendant's breach of its duty to properly advise Plaintiff with respect to medical coverage. *Id.* Plaintiffs contend that this duty is irrespective of the employment contracts. *Id.*

This Court must apply the four-part *Stout* test to determine whether arbitration must be compelled according to the employment Agreements between the parties.

### A.  Enforceability of the Arbitration Agreement

Under the first prong of the *Stout* test, the Court must determine whether the parties agreed to arbitrate. 228 F.3d at 714. Enforceability of an arbitration agreement is reviewed "according to applicable state law of contract formation." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)). Contract defenses such as "fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). If the Court is "satisfied that the making of the agreement for arbitration . . . is not [at] issue," the Court shall order the parties to arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4.

Plaintiffs do not allege that Dr. Prachun entered into the Agreement unknowingly or involuntary, or that Defendant ever threatened or coerced him. Furthermore, Plaintiffs do not

5

assert any state contract defenses that would invalidate the arbitration agreement. Rather, Plaintiffs argue that the arbitration agreement should not be enforced under these circumstances because the underlying dispute pertains to Defendant's negligence, not Plaintiff's employment. Accordingly, the Court concludes that the Agreements are enforceable.

## B. Scope of the Agreement

Under the second prong of the *Stout* test, the Court must determine the scope of the agreement. *Stout*, 228 F.3d at 714. Generally, employment contracts fall under the FAA and the agreement can subject all employment-related claims to arbitration. *See Byrd v. CIGNA Healthcare,* No. 1:00-CV-337, 2002 WL 32059026, at *4 (E.D. Tenn. Feb. 8, 2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)). For an arbitration to be imposed, all claims sought must fall within the scope of the terms agreed to by the parties. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Plaintiffs claim that the arbitration agreement provision should not apply because their negligence claims exceed the scope of the arbitration agreement. In *Parsley*, the District Court outlined a two- step process to determine the scope of an arbitration agreement. *Parsley v. Terminex Int'l Co, L.P.*, No. C-3-97-394, 1998 WL 1572764, at *6 (S.D. Ohio. Sept. 15, 1998) (Rice, J.). "*First*, the Court must determine the breadth of the arbitration agreement provision. *Second*, the Court must conclude whether the claims fit within the scope of the provision." *Id.*

### *1. Breadth of the Arbitration Provision*

Both Agreements provide that "any and all disputes, controversies or claims arising out of or relating to this Agreement or Employee's employment by the Company shall be settled by arbitration." (Doc. 8-1 at 14, 23). Federal courts have interpreted the phrase "arising out of or relating to" as broadly applying to tort actions, rendering such claims arbitrable under arbitration agreements. *See, e.g.*, *Parsley*, 1998 WL 1572764, at *6 (finding that plaintiff's wrongful death

6

action fit within the scope of "arising out of or relating to" language in arbitration agreement contained within a contract for terminate extermination). Likewise, this Court takes a broad view of the phrase "arising out of or relating to" and interprets it to "encompass all claims, contractual or tort, touching on the contract." *Id*.

## 2. *Scope of the Arbitration Provision*

In determining whether Plaintiffs' negligence claims fit within the scope of "arising out of or relating to" language, the Court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted, to determine whether the claims raised by Plaintiff stem from performance of the agreement." *Id.* (quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987)) (internal quotation marks omitted). In addition, the Sixth Circuit has stated broadly that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.... If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms." *Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n. 12 (6th Cir. 2005) (citations omitted). Moreover, claims that "'hav[e] their origin or genesis" in a contract containing a broad arbitration clause "arise out of' that contract" "whether or not they implicate interpretation or performance of the contract per se." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.,* 350 F.3d 568, 578 (6th Cir. 2003) (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd*., 1 F.3d 639, 641-42 (7th Cir. 1993)) (quotation marks omitted.

RRIA argues that Plaintiffs' negligence claims are covered under the employment Agreement that Dr. Prachun agreed to during his employment. In support of its contention, RRIA points to language contained in the 2011 Agreements providing: "Employee shall be entitled to

7

participate in the various employee benefit programs provided by the Corporation to its physician employees, as the same shall exist during the term of this Agreement, subject to eligibility criteria and other terms and conditions contained in said programs," (Doc 8-1 at 6), as well as to language in the 2012 Agreement stating: " [i]n addition to such compensation, Physician shall be entitled to participate in the employee benefits program now in force or hereafter established by the Company, including qualified retirements plans . . . ." (Doc 8 at 18). The single inquiry is whether the alleged tortious breach by Defendant occurred within the scope of the Agreement.

In *Parsley*, plaintiffs claimed that defendant, a termite exterminator plaintiffs had hired, applied pesticides too close to their drinking water source, thus contaminating the water and causing severe bodily injury. *Parsley,* 1998 WL 1572764, at *1. The Sixth Circuit determined that the wrongful death and survival actions arose out of or related to the extermination agreement between the two parties. *Id.* at *7. The Court relied on the broad language of the arbitration clause and policy of resolving doubts in favor of arbitration. *Id.* Specifically, the terms of the contract provided, in relevant part: "The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to this agreement shall be settled exclusively by arbitration." *Id*. at *1. The Court determined that the plaintiff's claims "stem from the performance of the defendant's contract to exterminate." *Id.*

The same principles expressed in *Parsley* apply in employment contracts, as discussed in *McLean v. Byrider Sales of Indiana S, LLC*, No. 2:13-CV-524, 2013 WL 4777199, at *1 (S.D. Ohio Sept. 5, 2013) (Frost, J.).  In that case, the plaintiff completed an employment application for a posted management position at the company, Byrider. After learning that the plaintiff would need to miss work one Friday each month for the next several years in order to fulfill his

8

Army National Guard obligations, Byrider did not hire the plaintiff. *Id.* The plaintiff claimed the defendant violated the Uniformed Services Employment and Reemployment rights Act ("USERRA"), 38 U.S.C. § 4311, and Ohio Revised Code § 4112.02. *Id*. at *4. The District Court determined that both claims fell within the scope of the arbitration agreement in the employment application because the arbitration provisions covered "any and all claims, disputes, or controversies arising out of or relating to [Plaintiff's] application for candidacy for employment." *Id.*

The case upon which Plaintiffs rely in support of their contention is not applicable in the present case. In *Bentley v. Cleveland Browns Football Co.*, the Court found allegations of fraud and negligent misrepresentation arising from bodily injury as a result of a football player's voluntary use of a team rehabilitation facility did not fall within the scope of a collective bargaining agreement ("CBA"). 194 Ohio App. 3d 826, 832, 958 N.E.2d 585, 589 (8th Dis. 2011). It was undisputed that nothing in the CBA required Bentley to use the rehabilitation facility. *Id.* Accordingly, the Court determined that "Bentley's postsurgical rehabilitation would not have contravened the CBA if he had chosen to go elsewhere;" therefore, "it would be unnecessary to analyze the CBA to resolve the claims that arose from his contracting the staph infection at the Cleveland Brown's facility." *Id.* The facts in *Bentley* are not analogues to the present case. Unlike *Bentley*, this case involves tort claims that arise out of the employment agreement between Dr. Prachun and RRIA. The negligence claims stem from allegations that RRIA, as an employer, failed to provide competent advice in procuring medical insurance. Furthermore, it is the behavior by RRIA, as an employer performing according to the terms of the Agreements with Dr. Prachun, that caused Plaintiffs allegedly to suffer the tort of emotional distress.

9

Like the arbitable claims discussed above in *Parsley*, all of Plaintiffs' claims flow from Dr. Prachun's employment relationship with Defendant. Plaintiffs' entire Complaint is grounded in Defendant's conduct as his employer, and alleged breaches of the Agreements, and/or torts related to the enforcement of the Agreements. As stated, the Agreements specifically cover "benefits program[s] not in force or hereafter established by the Company." (Doc. 8-1 at 2). Considering "the broad language of the arbitration clause and the policy of resolving doubts in favor of arbitration," the Court finds that the phrase "arising out of or relating to" encompasses all Plaintiffs' claims here, both in contract and in tort. *Parsley*, 1998 WL 1572764, at *7.

The Court agrees with Defendants that Mrs. Prachun's claim, as a bystander, for negligent infliction of emotional distress as a result of RRIA's alleged breach of duty are similarly arbitable. It is undisputed that Mrs. Prachun was neither a signatory to the 2011 Agreement nor the 2012 Agreement. However, she seeks to make claims against RRIA that are substantively the same as Dr. Prachun's claims against RRIA. *Mac Tools v. Diaz*, No. 2:11-cv-940, 2012 WL 1409395 at *5 (S.D. Ohio Apr. 23, 2012) (Smith, J.) (finding that plaintiff's wife, a nonsignatory, was bound by arbitration clause because she sought and expected benefit from her husband's agreement with defendant and their claims were substantively the same). The Sixth Circuit has found that, "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision." *Mac Tools,* 2012 WL 1409395 at *5 (citing *Javitch v. First Union Sec., Inc*., 315 F.3d 619, 629 (6th Cir. 2003)). Mrs. Prachun clearly expected to benefit from her husband's agreement with RRIA. Plaintiffs' claims are inseparable insofar as they allege misconduct and breach of duty by RRIA, thus both are bound to submit their claims against RRIA to arbitration. *Id.* at *6.

10

### C. Congressional Intent

Under the third prong of the *Stout* test, if federal statutory claims are asserted, the court must consider whether Congress intended those claims to be nonarbitrable. *Stout v. J.D. Byrider*, 228 F.3d at 714. The Supreme Court provides guidance on determining Congressional intent:

> The Arbitration Act, standing alone . . . mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such intent will be deducible from the statute's underlying purposes.

*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987). Plaintiffs allege that Defendant breached its duty to properly advise Dr. Prachun with respect to medical coverage. This Court has already determined that this claim falls within the scope of ERISA and is preempted by ERISA. (Doc. 40). To override the Arbitration Act's mandate in this case, the Plaintiffs must demonstrate that Congress intended to make an exception to the Arbitration Act for claims arising under ERISA. *McMahon*, 482 U.S. at 227. The Plaintiffs have not met their burden to show ERISA claims are non-arbitable.

The Sixth Circuit has not spoken directly on whether ERISA preempts arbitration under the FAA. *See Simon*, 398 F.3d 765, 775 (declining to answer whether ERISA preempts arbitration under the FAA because the plaintiff's ERISA claim did not fall within the narrow scope of the arbitration clause). In *Simon*, the Sixth Circuit noted, however, that a majority of courts considering whether ERISA preempts arbitration under the FAA have held that disputes arising under ERISA, including COBRA claims, are subject to arbitration under the FAA. *Id.* at 774 (collecting cases). For example, in *Bird v. Shearson Lehman/American Exp., Inc.*, the participants and beneficiaries in a trust brought suit alleging breach of fiduciary duties under ERISA after signing a standard customer agreement requiring submission to arbitration of all

11

disputes relating to the trust fund or the contract. 926 F.2d 116, 117 (2d Cir. 1991). Subsequently, the defendant filed a motion seeking a stay of the court proceeding in order to submit the dispute to arbitration as required by the agreement. *Id.* at 118. In considering the enforceability of the arbitration clause in the agreement, the court examined the text and the legislative history of ERISA and found no evidence that Congress had intended to preclude the use of a non-judicial forum for dispute resolution. *Id.* at 119. The court acknowledged the language that Congress added to offer a measure of protection for employee benefit plan participants by allowing them ready access to the federal court system. *Id.* at 120. However, there was no explicit language in the statute that would indicate intent to preclude other forms of dispute resolution. *Id.* The court held that when an enforceable agreement exists which requires the use of arbitration to resolve disputes arising under ERISA, such an agreement is fully enforceable under the provisions of the FAA. *Id.* at 122.

Furthermore, the Supreme Court has "repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court." *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 671 (2012). In *CompuCredit Corp.*, the Court enforced an arbitration agreement with respect to a cause of action created by the Credit Repair Organizational Act ("CROA") which was "silent on whether claims under the Act can proceed in an arbitrable forum." *CompuCredit Corp.*, 132 S.Ct. at 673. The Court relied upon its previous rulings that upheld arbitration agreements covering federal causes of action created by statutory provisions.

Because (1) the asserted claim is within the scope of the Agreement; (2) ERISA is silent on whether claims under the Act can proceed in an arbitrable forum; and (3) the authority of this

Circuit and the Supreme Court suggests ERISA does not preempt the FAA, this Court finds Plaintiffs' ERISA claims arbitable.

### D. Stay

Under the fourth prong of the *Stout* test, the court must determine whether to stay the remainder of the proceedings pending arbitration. All claims asserted by Plaintiffs are subject to the arbitration provision in the Agreements. The court directs the parties to proceed to arbitration.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration (Doc. 8) is **GRANTED** and this case is **STAYED** pending arbitration. The parties shall proceed to arbitration for a disposition of all of their claims.

.

**IT IS SO ORDERED.**

                                                  s/ Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED: September 3, 2015**